Black *v.* Lamb.

---

JOHN BLACK and others *vs.* RESTORE S. LAMB and others.

This court will, of its own motion in a proper case, refer a disputed question of fact to the decision of a jury.

After a verdict has been rendered, the question of a new trial rests entirely in discretion, so much so that an appeal will not lie from a decision of the court on such motion.

So an appeal will not lie from an order of the court directing or refusing an issue.

The mode of trial before the jury and the effect to be given to the verdict are matters in the discretion of the Chancellor; he may give directions to the court to which the issue is sent for trial to disregard the strict rules of law ; and although competent testimony has been rejected, and illegal admitted, or the judge has misdirected the jury, he is not bound to grant a new trial.

In this case the issue directed to be tried by the jury was this—" whether the

Black *v.* Lamb.

agreement bearing date the second day of February, 1835, set out in the complainants' bill, was executed by the parties thereto as their act and deed unconditionally, or upon the understanding or agreement that the same should be executed by the remaining stockholders of the Delaware and Atlantic Railroad Company before the same should be delivered as an agreement binding upon the subscribers, and whether the same ever was, in point of fact, legally delivered by the parties thereto, or by their authority, to the said John Black, Joseph Smith, and Benjamin Jones, or either of them."

*Held,* that this was the proper issue in the case ; that an issue of *non est factum* would have been too broad.

*And held further,* that the objection to the issue was too late after trial.

That parol evidence is admissible to show that, previous to the obligors signing the deed, there was an agreement between the parties to the instrument, that all the stockholders of the company should sign it, and that it was signed by them with the understanding or agreement that it should not be delivered until the signatures of all were procured.

There is a manifest difference where the testimony is offered for the purpose of showing that the writing was not to be delivered until a condition precedent was performed, and that it was delivered with an agreement that the condition was to be performed. In the one case, the purpose of the evidence is to show that the instrument never was legally delivered, and therefore never had any binding effect—in the other, to contradict the instrument, which is absolute upon its face, by showing, contrary to the instrument, that it was not absolute, but conditional.

The book of minutes of the railroad company was admitted in evidence, to go to the jury for the purpose of proving what took place at several meetings of stockholders, called for the purpose of procuring the loan for the company with which the indemnity bond in question was immediately connected. In it were recorded the meetings of the parties to the bond, and what took place between them in relation thereto, and it was kept by their secretary.

*Held,* that the book was admissible, as containing the agreement of the parties, reduced to writing by a person mutually chosen for the purpose.

When, by the order of this court, certain depositions are authorized to be read on the trial of an issue before a jury, the judge conducting that trial has nothing to do with the admissibility of the whole or any part of the evidence. This court is responsible for the legality of the evidence.

Objections to testimony taken before the master are to be settled by this court, and if they are not renewed at the hearing, or when the depositions are acted upon by the court, they are waived.

The general rule admitting in evidence the declarations of a party to the record applies to all cases where the party has *any interest* in the suit, whether others are *joint parties* on the same side with him or not, and howsoever the interest may appear, and whatever may be its relative amount. And in the absence of fraud, if the parties have a joint interest in the matter in suit, whether as plaintiffs or defendants, an admission made by one is, in general, evidence against all.

VOL. I.                                    K

*Black v. Lamb.*

On the trial of an issue before a jury, directed by this court, a complainant is not a competent witness, by virtue of the act of 1855, to disprove so much of the defendant's answer as may be responsive to the bill of complaint.

The trial in the court of law directed by this court is not a proceeding of an equitable nature, but is to be regulated by practice of the court in which it is held, subject, however, to the control of this court over the parties, as to the mode and terms of trying such issue.

Whether the jury should be permitted to take out with them the answers and depositions which were ordered to be read, was a matter in the discretion of the judge trying the case.

The bill stated the proceeding of the directors and stockholders of the company in reference to the loan, to secure which the bond of indemnity in dispute was given; the financial situation of the company; the inducement to make the loan; the borrowing of the money; and then, as consequent upon these proceedings of the directors and stockholders, the execution and delivery of the covenant of indemnity.

*Held*, that the statement in the answer constituting the point of defence, that the bond was not signed by all the stockholders, was responsive to the bill, inasmuch as the defendants could not fully and truly answer the bill without stating this fact.

---

*W. Halsted* and *A. Browning*, for complainants.

*Att'y Gen. Dayton* and *P. D. Vroom*, for defendants.

THE CHANCELLOR. This cause having been argued on the pleadings and proofs, the court, of its own motion, ordered a trial at law of an important issue made by the pleadings. The foundation of the complainants' bill, and of their right to relief, was an indemnity bond, which the bill alleged was executed and delivered by the defendants to the complainants. The issue directed to be tried was this—"*whether the agreement, bearing date the second day of February, 1855, set out in the complainants' bill was executed by the parties thereto as their act and deed unconditionally, or upon the understanding or agreement that the same should be executed by the remaining stockholders of the Delaware and Atlantic Railroad Company before the same should be delivered as an agreement binding upon the subscribers, and whether the same ever was, in point of fact, legally delivered by the parties thereto, or by their authority, to the said John Black, Joseph Smith, and Benjamin Jones, or either of them.*"

The jury found, as appears by the *postea* returned, that the said agreement was executed as the act and deed of the defendants unconditionally, but that the same was executed upon the understanding and agreement that the same should be executed by the remaining stockholders of the Delaware and Atlantic Railroad Company before the same should be delivered as an agreement binding upon the subscribers thereto, and that the said agreement never was, in point of fact, legally delivered by the parties thereto, or by their authority, to the said John Black, Joseph Smith, and Benjamin Jones, or either of them, in manner and form, &c.

The judge certified the verdict to this court with his notes of the trial. In his certificate he states, that although the case was not free from difficulty, on the whole he is satisfied with the verdict.

At the last term of the court, a motion was made, on behalf of the complainants, for a new trial, which was very fully argued by counsel on both sides.

This cause is an important one, and has excited a good deal of interest. The amount of money at stake is large, and there are a number of citizens of the county of Burlington immediately interested in the issue. As in its progress it has been presented for my deliberation, I have given it the best consideration in my power, and my decisions have been without the least regard to the parties on either side. I make this general reference to the case, because it was declared, with some emphasis on the argument of this motion, that as an issue at law was not requested by either party, it ought not to have been directed, and that the court ought to have assumed the responsibility, and decided the cause. It is true neither party did ask for the issue, and I presume the reason was, judging from the confidence assumed by the counsel on both sides, that both considered the case so clear in favor of their respective clients that they did not consider there was any room for a doubt in the mind of the court. This

very circumstance is some evidence of the propriety of
the course adopted; and upon further reflection, and
looking at the result of the trial, I do not at all regret
that I directed the issue.  It appears to me now, with the
additional light I have upon the subject, to be an issue
eminently fitted to be submitted to a jury.  The whole
case turns upon a question of fact—whether the execu-
tion of the instrument was consummated by delivery.
The obligors produce the instrument.  It is signed and
sealed by twenty-one obligors in the presence of five sub-
scribing witnesses.  These witnesses, upon the face of
the instrument, purport to be the subscribing witnesses
to its execution by all the obligors, which in fact was not
the case, but each witness attested for different obligors.
Upon proving the handwriting of the witnesses, some of
whom were dead and others absent from the country at
the time the testimony was taken, and the handwriting
of the obligors, the obligees rely upon the *prima facie*
case thus made of a delivery.  The obligors insist that
there was no delivery; that when it was executed by
them, it was upon condition that it should not be deliv-
ered until it was executed by all the stockholders of the
railroad company.  It is an old transaction of more than
twenty years' standing.  The recollection of the witnesses
differ as to facts, and the intrinsic evidence and circum-
stances relied upon are susceptible of different interpre-
tations.  The amount involved is upwards of sixty thou-
sand dollars.  The suit was brought into this court, not
because this is the appropriate tribunal to determine the
fact upon which the whole case rests, but because, after
that fact is ascertained, the intervention of this court is
necessary to adjust the rights of the parties, if the instru-
ment was in fact legally executed and delivered.  Now it
is very manifest, if this court had decided the fact thus
involved in so much embarrassment, the unsuccessful
party would always have considered that he had been
unjustly deprived of his rights, and that the determina-

Black *v.* Lamb.

tion of the fact upon which those rights depended ought to have been submitted to a jury of the country. After very able and elaborate arguments of counsel upon the facts, my mind was embarrassed. I could not decide the disputed question of delivery with a consciousness that I had decided right. I felt that I had a right, under such circumstances, to call in the aid of a jury. In the case of *The Trenton Bank* v. *Woodruff et al.*, 1 *G. C. R.* 117, the Chancellor, of his own motion, directed an issue.

Before considering the grounds upon which this application is based, I would remark, that this matter of a new trial is entirely in the discretion of the court, so much so that I suppose there can be no doubt that an appeal will not lie from a decision of the court upon such a motion as this. Certainly no appeal would lie from an order of the court directing an issue, or for refusing one upon the application of either party; and it would seem very clearly to follow, that no appeal would lie from any disposition the court might see fit to make in regulating the proceedings consequent upon the original order. As the whole proceeding is adopted for the purpose of informing the conscience of the Chancellor, and as he is not bound by the verdict, but must still decide the very issue according to the dictates of his own judgment, all the proceedings must necessarily be a matter of discretion with him. He may give directions to the court to which the issue is sent for trial to disregard the strict rules of law; he may direct the admission of evidence which the rules of law would exclude, and he may order one or both parties to be examined as witnesses. *Gresley's Eq. Ev.* 402, 403; *Hoff. Ch. Pr.* 511. It may be perfectly clear that competent testimony has been rejected, and illegal admitted, or that the judge has misdirected the jury; and yet this court is not bound to grant a new trial for any of these reasons. *Basset et al.* v. *Johnson et al.*, 1 *G. Ch. R.* 155; *Van Alst et al.* v. *Hunter et al.*, 5 *J. C. R.* 149. " The standard itself being so vague as the satisfaction of the conscience of

K*

the individual judge who has directed the issue, the rules for granting a new trial are extremely indefinite. He will often, almost arbitrarily, (perhaps on a suspicion which he has formed that a witness has been perjuring himself) send it back to another jury, or even decide in the teeth of a verdict. And he will often pay no heed to the most flagrant misdirections of the judge, or mistakes as to the admission of evidence, if he can satisfy himself what the verdict ought to have been on the admitted and tendered evidence which was sound." *Gresley's Eq. Ev.* 405.

But the court ought to exercise its discretion in this, as well as in all other matters of mere discretion, in such a manner and upon such principles as will give satisfaction in the administration of justice. If, therefore, the court gives any weight to the verdict in the decision of the cause, it ought not to allow a verdict to stand, as a guide to its judgment and an excuse to its conscience, where important evidence, which is entitled to material weight with the jury, has been improperly admitted or rejected, or where the judge has charged the jury in a manner calculated to mislead them on an important point. The court ought not to listen to mere technical objections, and may very properly, and often does, refuse a new trial upon grounds which would prevail as a matter of course in a court of law. In the case of *The Trenton Banking Company* v. *Rossell, trustee,* 1 *G. C. R.* 511, the Chancellor said, that as he was satisfied with the verdict, he would not examine the question, whether any such misdirection of the jury was in fact made by the judge at the circuit as was insisted on by the counsel on the motion for a new trial.

I will consider in detail the several grounds which have been urged in favor of a new trial.

*First.* The issue is objected to, both as to form and substance. It is said the wording of the issue caused embarrassment in the progress of the trial, and that it

should have been simply an issue of *non est factum.* The issue is the one made by the answer. I do not see how any embarrassment could possibly arise from the language in which it is couched. The judge did not seem to entertain the opinion that any such embarrassment existed. He explained it to the jury very satisfactorily, and presented to them the very point of the controversy in so clear a manner as to leave no room for any misunderstanding as to its purport and character. An issue of *non est factum* would have been an improper one, and wholly uncalled for as the case stood before this court. It would have opened a field of unprofitable and useless controversy. The signatures of the obligors were admitted. Upon a plea of *non est factum,* the defendants would have been at liberty to prove the instrument a forgery, and to have set up many other defences against it which were not open to controversy. The issue was properly confined to the question—whether the instrument was executed by the parties thereto unconditionally, or upon the understanding or agreement that the same should be executed by the remaining stockholders, before the same should be delivered as an agreement binding upon the subscribers. The very issue which the parties themselves made by their pleadings in this court, and the one upon which the court desired light and information, has been submitted to the jury, and I think, in a manner to reach the very object the court had in view. But the counsel are too late with such an objection. The issue was made up with their concurrence. The order has the endorsement of the solicitor upon it, which was placed there without any objection or suggestion made as to the form or substance of the issue. The feigned issue was made up by the counsel of the complainants, and is wholly in the handwriting of their solicitor. This is the first that any objection has been made to it. If it was objectionable, its defects were waived. In the case of *Basset et al.* v. *Johnson et al.,* before referred to, upon a

motion for a new trial, it was objected that the issue formed was not broad enough, and that other inquiries ought to have been involved in it.   The Chancellor held that the objection was too late.

*Second.*   The objection is made, that illegal evidence was admitted on the trial.

*First.* That parol evidence was admitted to contradict a written instrument.   The judge admitted parol evidence to show that, previous to the obligors signing, there was an agreement between the parties to the instrument, that all the stockholders of .the company should sign it; and that it was signed by them with the understanding, or agreement, that it should not be delivered until the signatures of all were procured.   It would be difficult to find any well adjudged case where such evidence has been declared inadmissible.   The authorities cited by the counsel of the complainants do not sustain their objection.   They go no further than to decide that, where the instrument has been delivered to the obligee or covenantee by the obligor, or his agent, it is not competent to show by parol testimony that it was delivered as an *escrow* or upon condition.   The authorities are conflicting upon this point.   But the objection now made is not sustained by any one of the authorities cited. Parol testimony was not offered in this case, nor was it admitted for the purpose of showing that the instrument was delivered as an *escrow* or upon a condition to be performed precedent to its vitality.   The testimony was to show that the instrument was never legally delivered, but that it came into the possession of the complainants without the consent of the defendants, and that there was consequently no delivery.   The complainants had not shown any actual delivery.   They had made out a *prima facie* case only.   They had shown a *presumptive* delivery only. It was not to contradict the instrument, but to overcome this presumption, that. the evidence was offered and admitted.   It was to show that the possession of the complainants was not a lawful possession, but had been ob-

tained illegally. In the case of *The State Bank* v. *Evans,* 3 *Green's R.* 155, the defendant's name was on the bond as one of the sureties, and he proved that the bond was brought to him by one of his co-sureties, and that, when he signed it, he delivered it to his co-surety, and said to him—now this bond is not to be delivered up until all the persons named in it have signed it. The court held that the testimony was admissible, and that it overcome the presumption of any legal delivery arising from the mere fact of the obligees having possession of the bond. In *Pawling and others* v. *The United States,* 4 *Cranch* 219, the court decided that a bond may be delivered as an *escrow* by the surety to the principal obligor. In the case of *Duncan's heirs and representatives* v. *The United States,* 7 *Peters* 435, the court say : it is a principle of the common law, too well settled to be controverted, that where an instrument is delivered as an *escrow,* or where one surety has signed it on condition that it shall be signed by another before its delivery, no obligation is incurred until the condition shall happen. In the case of *The United States* v. *Jacob and Leffler,* 11 *Peters' Rep.* 86, on the trial of the cause before a jury, the principal in the bond, having been released by his co-obligors, was offered by the defendants, and admitted by the Circuit Court, to prove that one of the co-obligors had executed the bond on condition that others would execute it, which had not been done. In *Roberts* v. *Jackson ex dem. Wells,* 1 *Wendell* 478, it was held that parol evidence that a deed in the possession of the grantee was not delivered, is admissible, and does not infringe the rule, that such evidence shall not be received to contradict a deed. *Ch. J. Savage* says, the only question here is, whether parol evidence could be received to show the nondelivery? It is always competent to show that a deed was delivered as an *escrow,* or that the grantee obtained possession of it by fraud or in an unwarrantable manner. This must, of necessity, be shown by parol; and this species of evidence has never

been considered as coming within the rule, which rejects parol proof when offered to contradict a deed. So, also, 1 *Greenleaf's Ev.* § 284. In *Johnson and others* v. *Baker*, 4 *B. & A.* 437, 6 *E. C. L.* 479, before the execution of a composition deed, it was agreed, in the presence of the surety for the payment of the composition, that it should be void, unless all the creditors executed it. The surety, at the same interview, afterwards executed the deed in the ordinary way, without saying anything at the time of execution. The deed was then delivered to one of the creditors, in order that he might get it executed by the rest of the creditors. It was held that this was to be considered a delivery of the deed as an *escrow*, and that all the creditors not having executed it, the surety was not bound. The case of *Worrall* v. *Munn and Prall*, 1 *Selden's Rep.* 229, only decides, that delivery of a deed or agreement as an *escrow* can only be made to a stranger, and that in such case parol evidence of conditions qualifying the delivery, being contrary to the terms of the instrument, is not admissible. This is not in conflict with the authorities, which decide that parol evidence is admissible to show that the instrument was executed upon condition that it should not be delivered until a certain condition should be performed. The judge did not mean to disaffirm such a proposition, as is evident from what he says: "It was not handed to Henry Worrall as an unexecuted and imperfect paper. There was no direction to him to retain it, and not to deliver it to the appellant until it was satisfied by Prall. It was not left in his hands for a temporary purpose, and to be returned in case Prall did not assent to it; but it was delivered to Henry Worrall, as the agent of the appellant, as an executed and perfect instrument, on condition that Prall subsequently assented to it. Such a delivery was in law an absolute delivery." There is a manifest difference where the testimony is offered for the purpose of showing that the writing was not to be delivered until a condition precedent

was performed, and that it was delivered with an agreement that the condition was to be performed. In the one case, the purpose of the evidence is to show that the instrument never was legally delivered, and therefore never had any binding effect—in the other, to contradict the instrument, which is absolute upon its face, by showing, contrary to the instrument, that it was not absolute, but conditional. In the one case the delivery is denied, in the other it is admitted, and testimony is offered to show that such delivery was in contravention of the instrument itself, which is absolute on the face of it. This evidence was properly admitted.

*Second.* It is insisted that the book of minutes of the railroad company was improperly admitted as evidence to go to the jury. The book was offered for the purpose of proving what took place at several meetings of the stockholders, called for the purpose of procuring the loan for the company, with which the indemnity bond in question is immediately connected. The meetings were regularly organized by the appointment of chairman and secretary, and it is alleged that their proceedings were entered in this book of minutes. The objections to the book is, that the proof of its being the book of minutes was not sufficient, and that if proved it is not competent, because it is the book of a third party. There was positive evidence of this being the book of minutes of the company kept by their secretary. The correctness of the manner in which the book was kept was questioned; and whether it was kept in such a manner as entitled it to full confidence as a true record of the proceedings of the company, was a question not entirely free from doubt. The judge properly instructed the jury, that because the book was sufficiently proved to make it evidence for their consideration, they must judge, from the proof offered, how far it was entitled to credit, and that they must give just such weight to the evidence as, in their judgment, it deserved from the character of that proof. As to the ob-

jection, that this is a book of a third party, this is true. It is the book of minutes of the directors of the company. But the book was not offered indiscriminately. There were certain minutes of meetings of the stockholders of that company recorded in the book, and these were offered in evidence. Those meetings were regularly organized by the appointment of officers, and these minutes are offered as the minutes of their proceedings. They are not the history of meetings of third parties, but of the very parties to this writing. It is true they met as stockholders, but this business appertained to them in that capacity. The secretary says—the minutes were read at the several meetings of the company, and approved by them. But *Thomas Haines*, the secretary, swears that this covenant writing was prepared in pursuance of the directions of a meeting at which *the obligors and obligees were present*, and that he kept a minute of the meeting of the parties in writing, which is truly recorded in the book. Here, then, was a meeting of the parties, an agreement entered into between them, and that agreement reduced to writing by a person mutually chosen for the purpose. It is evidence, and can be called for as the best and only legal evidence of what took place between the parties.

But the admissibility of this evidence is put beyond all question, both as to the sufficiency of the proof and as to the competency of the evidence, by the complainants' bill. The bill refers to these very proceedings of the stockholders the minutes of which were offered in evidence, and makes them the foundation upon which they build their claim. Special reference is made to the meeting of the ninth of January, 1835, and which is alleged to have been a general meeting of the directors and stockholders, held, upon due notice personally given to the stockholders, for the purpose of devising means to extricate the company from embarrassment. It states what took place at that meeting, and that it was then and there resolved

to procure the loan of $35,000. Reference is made to the subsequent meeting of the stockholders, of the 23d of January, 1835, at which the committee upon the subject of the loan made their report; but the fact upon which this whole defence rests is not stated, *viz.* that it was resolved, at that meeting, that *all* the stockholders should execute the indemnity. Can there be a doubt, when the defendants produce the minutes of the meetings thus referred to, and show that this is the record, and the only record of them, that this record is competent evidence to go to the jury? There cannot be a doubt but the book of minutes was properly admitted as evidence by the judge at the circuit.

The *third* objection to the evidence admitted is to the deposition of *John Gibbs*, which was taken before the master. After reading the deposition, the complainants' counsel moved to overrule the second, third, fourth, and fifth questions. The fifth question was overruled. I think the judge erred in this ruling, not, however, in admitting the second, third, and fourth questions, but in overruling the fifth question. This deposition was read under the order of this court. It was taken by its authority and under its rules. When this court made an order that it should be read at the trial, the judge conducting that trial had nothing to do with the admissibility of the whole or any part of the evidence. This court, by its order, became itself responsible for the legality of the evidence. The only point is this: where testimony has been taken in the usual course of proceedings in this court, and a trial at law is awarded, and this court orders certain depositions to be read, can the judge at the circuit say that, in his opinion, they are not competent, and they shall not be read? The question is too plain a one to admit of any but one answer. The order was drawn up under the supervision of the counsel of the respective parties. It is an order taken upon the complainants' motion, and is endorsed by their solicitor. Neither party

having made any objection to the order, which directed the depositions of such witnesses as had theretofore been examined, and might be dead or incapable of attending from sickness, or be out of the jurisdiction of the court at the time of the trial, to be read, it was too late to make any objection at the trial.   The proper time and place for excepting to the supposed objectionable questions was before this court at the time the order was made.   It is true the questions were objected to before the master; but where objections to testimony are taken before the master they are to be settled by this court; and if they are not renewed at the hearing, or when the depositions are acted upon by the court, they are waived.   It certainly was not the duty of this court to wade through all the evidence, and to select out of it such parts as are illegal. It was the duty of counsel, when the court made the order in reference to the depositions to object to them, or to such parts of them as they deemed objectionable, if there were any objections to be made.

The *fourth* objection to evidence is that to the declarations of Joseph Smith.   Joseph Smith is a co-obligee in the covenant and a party to the record.   His declarations were properly admitted.   The general rule, admitting the declarations of a party to the record in evidence, applies to all cases where the party has *any interest* in the suit, whether others are *joint parties* on the same side with him or not, and howsoever the interest may appear, and whatever may be its relative amount.  1 *Greenleaf's Ev.* § 172. And in the absence of fraud, if the parties have a joint interest in the matter in suit, whether as plaintiff or defendant, an admission made by one is, in general, evidence against all.  § 174.

A *fifth* objection, in reference to the admission and rejection of testimony, is that the complainants offered John Black, one of the complainants, as a witness to disprove so much of the defendants' answer as is responsive to the allegations contained in the bill of complaint.

This offer was made under the law of 1855, (*Nixon's Dig.* 887, § 2,) which provides that the complainant or petitioner, in any action or proceeding of an equitable nature in any court, shall be a competent witness to disprove so much of the defendant's answer as may be responsive to the allegations contained in the bill of complaint or petition. In order to appreciate the merits of this question, it is necessary to understand fully the character of the trial in the court of law. It was not a proceeding of an equitable nature in that court. The court was directed to try an issue at law. After the issue is settled or agreed upon, the subsequent proceedings are regulated by the practice of the court in which it is to be tried; subject, however, to the control of this court over the parties, as to the mode and terms of trying such issue. 1 *Hoff. Ch. P.* 511; 1 *Turn. Prac.* 450. The court of law knows nothing of the equitable proceedings in the case, or whether there is any, or what are the pleadings in the court of equity. The court must try the issue, not as an equitable proceeding, nor regulated by any statutes or rules which are applicable to proceedings of an equitable nature. The issue must be tried as a strict issue at law; and the rules of law in regard to evidence, its admissibility, and the weight of it, govern the proceedings, except so far as they have been otherwise regulated by the terms of the issue out of this court. It is a principle upon which equity jurisprudence is administered, as inflexible in its application as any statute could make it, that in equity a defendant is entitled to the benefit of his answer, and that where it is responsive to the bill, it must be overcome by the oaths of two witnesses, or of one confirmed by strong circumstances. But if the issue is made up without any order to read the answer at the trial the court will not hear it. An appeal to the court, that in equity the defendant is entitled to the benefit of his answer, would be in vain. The reply of the court would be, that it was trying a pure question of law, and that it had

nothing to do with any statute, or rules of pleading or evidence, regulating proceedings of an equitable nature. The statute has no application to the case. The complainant, who was offered as a witness, was not a complainant or petitioner in any action or proceeding of an equitable nature in that court. He was the plaintiff in a feigned issue of law. The record shows the character of the proceedings. It purported to be pleas in the Supreme Court, and contained the pleadings of the parties and the issue to be tried. When the party was offered as a witness, and claimed that, as a complainant in an action of an equitable nature, the statute gave him the privilege of being sworn as a witness, the court had no other guide to ascertain the position which the party claimed than the record itself, which described the parties and the issue. By that record, the parties appeared as plaintiffs and defendants in an ordinary suit at law.

If a party desires to be examined as a witness, he should make application to this court. If the application is proper, the court will make the order for his examination. But in this case, had an application been made to this court for the examination of John Black, the court would have refused it. If such refusal would have been right, it shows the propriety of the decision of the judge at the circuit; for the grounds of such refusal are such as could not, in any judicial way, have been made known to the judge. The proofs had been closed in this court, and the cause had been argued here. The cause had been submitted upon the proofs taken. If this law, then, of 1855 was passed, as was insisted by the complainants' counsel, before the proofs were closed, then the party had waived his privilege under the statute. He could not submit his cause for decision without offering himself as a witness, and then finding, by the decision of the Chancellor, where the shoe pinched, and where proof was wanted but upon one single issue in the case, offer himself as a witness upon that issue. He waived his right.

The court might well ask him why he had not made the offer before, and if he had that information in his own breast which would have relieved the embarrassment of the case, why he had not divulged it sooner, so that the necessity of this issue might have been avoided. I think the court was right in rejecting John Black as a witness.

I have disposed of all the objections which were taken as to the admission or rejection of evidence. I shall notice very briefly the remaining grounds upon which a new trial is asked. Objection is made to the court's permitting the jury to take out with them the answers of the defendants, and also the depositions which were ordered to be read. It appears to me that this was a matter entirely in the discretion of the court. If only *parts* of the answers and *parts* of the depositions had been directed to be read, the propriety of permitting the jury to take them as a whole might well have been questioned. But as the answers and depositions, as they were before the court, were directed to be read in evidence, the object of reading them was that their contents might be impressed upon the minds of the jury, and I can see no reason why the papers should have been withheld from them.

The charge of the court, in one particular, is objected to. In reference to the bill and answer, which were ordered to be read as evidence, the judge charged as follows: " You will have the bill of the complainants and this answer before you, and it is unnecessary for the court to dwell on its statements. That part of the answer which relates to the alleged understanding or agreement is not strictly responsive to the bill. It is new matter set up in avoidance of the covenant; but it is nevertheless entitled to your consideration as evidence in the cause. Its weight is exclusively for you to determine."

Now the counsel of the complainants say, that the court was in error in charging that the part of the answer which sets up the alleged understanding or agreement is not strictly responsive to the bill. They were

L*

obliged to assume this position in order to gain a foothold for the admission of John Black as a witness. He could not possibly be a witness, except as to matters in the answer which are strictly responsive to the bill; and as the point on which they wished to examine him was "the alleged understanding or agreement," if the part of the answer referring to it is not responsive to the bill, there could be no pretence that he was a competent witness. If, then, the judge was in error, and should have told the jury that this was responsive to the bill, I cannot see how the complainants can complain that the jury were told that the answer was entitled to their consideration as evidence. Whether the judge was or was not correct in telling the jury that this part of the answer was not responsive to the bill, is a question not entirely free from difficulty. I am inclined, however, with the counsel on both sides, to think that the answer in this particular is responsive to the bill. The complainants had seen proper to state, in their bill, the proceedings of the directors and stockholders of the company in reference to the loan—the financial situation of the company—the inducement to make the loan—the borrowing the money consequent upon these proceedings of the directors and stockholders. Then the bill states, as consequent upon all these proceedings, the execution and the delivery of the covenant of indemnity, and the defendants are called upon for a discovery as to all these particulars and as to the execution of the covenant. The response to these particulars necessarily included the fact which constitutes the defence. The defendants could not answer the bill, and state truly what took place at the meetings of the directors and stockholders, and the inducement for making the loan and of making this indemnity, without revealing and stating the fact, that it was a part of the transaction that this indemnity was to be given, and that it was to be signed by *all* the stockholders. It was not at all necessary for the complainants to make their case so

broad; but a bill may be so framed as to make a matter of defence responsive to the bill, which, if the bill had been otherwise framed, would have been new matter in avoidance. The charging as well as interrogating parts of a bill are too often used to no purpose and without any regard to consequences. *Lord Eldon,* in *Partridge* v. *Haycraft,* 11 *Ves.* 575, says—"Formerly the bill contained very little more than the stating part. I have seen such a bill, with a simple prayer that the defendant may answer all the matters aforesaid, and then the prayer for relief. I believe the interrogating part had its birth before the charging part. Lord *Kenyon* never would put in the charging part, which does little more than unfold and enlarge the statement."

It appears to me the charge of the judge, in the particular referred to, is as unexceptionable, as far as the complainants' rights are concerned, as it well could be. The order of this court made the answer evidence. The court was obliged to admit it, and could not say less than that it was entitled to the consideration of the jury as evidence in the cause, and that its weight was exclusively for them to determine.

It is insisted that the verdict is against the weight of evidence. The judge has certified that, although the case was not free from difficulty on the whole, he is satisfied with the verdict. If, after an examination of the evidence, I should have been satisfied that the verdict was against the weight of it, and should have been the other way, I would not direct a new trial, but would disregard the verdict. Because, if my judgment was satisfied that upon the evidence the verdict should have been for the plaintiff in the issue, I should not want the formality of another trial to satisfy my conscience how I ought to decide the fact to be. But I cannot, after a most careful and thorough investgation of the case, say that I am not satisfied with the verdict of the jury.

The only other ground upon which a new trial is asked

Black *v*. Lamb.

is, that there is additional evidence which it is now in the power of the complainants to produce. There are five subscribing witnesses to the writing. Four are dead. *Samuel H. Jones*, who is the only one living, was absent in Europe at the time of the trial. He is a son of Benjamin Jones, one of the complainants, and has returned lately to this country. His affidavit is produced, and a new trial is asked that the complainants may have the benefit of his testimony. It is not unreasonable to suppose that at the time of the trial the complainants knew that the witness would shortly return. It would have been a strong ground upon which to have based an application for a postponement of the trial, that the only living subscribing witness was then absent, and that he would shortly return. No such application was made. The complainants chose to risk a trial without him. The nature of the evidence that would be produced they were fully apprized of, and cannot plead that they were not aware of the materiality of the evidence of the witness, and the importance of his presence.

But, upon a careful examination of the affidavit of the proposed witness, I do not think that the facts within his knowledge are of much importance. The important fact is disclosed by him, and it is one which is very much against the complainants, that the subscribing witnesses put their names to the paper more as a matter of mere form than as witnesses who were to be relied upon to prove its execution. As I have said before, upon the face of the instrument the signatures and seals of the obligors purport to be attested by five subscribing witnesses. Now the fact is disclosed, by this witness, that it was not executed in the presence of five subscribing witnesses. The witness says the paper was brought to the office of his father in Philadelphia, and that he there signed it; that after it was executed by his father, it was placed in his fire-proof safe, No. 17 South wharves, Philadelphia, where it remained a long time. The affi-

davit does not tell us when or where he subscribed the paper. He says he has an *impression* that it was signed by other persons in his presence, but who they were besides his father he does not recollect. And yet, after saying that he had an *impression* only, (compelling the counsel who drew the affidavit to erase the word *recollection*, and to substitute *impression* for it, as appears from an inspection of the affidavit,) he undertakes to say that he was the only subscribing witness to the signature of those persons who executed it in his presence, and that they signed it unconditionally. The evidence of this witness would not help the complainants. He does not pretend to know anything of the origin of the transaction; and from the careless manner in which he was called upon to be a subscribing witness would seem to give color to the allegations of the defendants, that it had been all arranged as to who should be parties to the instrument, and how executed.

This verdict must stand for what it is worth. I can see no good reason for disturbing it.